■ JAMES B. JOWERS, Petitioner, v. STATE OF NEW YORK EXECUTIVE DEPARTMENT et al., Respondents.— Determination of the respondent State Division of Human Rights Appeal Board, dated March 6, 1973, confirmed, without costs and without disbursements, and the petition dismissed. Petitioner was employed as a counterman and was offered a position as griddleman at a higher rate of pay. His working hours were from 7:00 A.M. to 4:00 P.M. Initially, the changed status did not result in a change of working hours. Due to operational necessities, namely, discontinuance of the hot breakfast program, one griddleman was laid off and petitioner's work shift was changed. He was assigned the 11:00 A.M. to 8:00 P.M. shift. Petitioner complained that this change in hours interfered with his attending evening classes. To enable him to continue to attend evening classes petitioner was offered an earlier shift, at the same rate of pay, at another location within the New York University complex in Washington Square. Petitioner refused the offer since his seniority status would be affected. A return to the position of counterman would mean a salary cut. There was no showing, upon the papers submitted, that the change in work assignment was attributable to discrimination because of race or color and therefore the determination of the respondent in favor of the employer should not be disturbed. Concur — Murphy, Lane and Tilzer, JJ.; Stevens, P. J., and Markewich, J., dissent in the following memorandum by Stevens, P. J.: I dissent and feel that the determination appealed from should be annulled and the proceeding remanded to the State Division of Human Rights (Division). Plaintiff-complainant, a black, is employed at the cafeteria of New York University's Loeb Student Center. He has been so employed since 1963. First classified as a Counterman, Group III, in 1968 he was promoted and reclassified as Griddleman, Group IV. There was a change in Petitioner's work shift hours which Petitioner alleges had the effect of denying to him the educational benefit of attending New York University's School of Continuing Education. Plaintiff alleges the change was against his will and due to his color. An investigatory conference was called on January 27, 1972 at which all

parties involved appeared except the Union, Local 302. Later a letter of apology was sent by counsel for the Union to the senior field representative of the State Division of Human Rights. The letter sought to answer certain questions posed and, in addition, made reference to complaints by complainant to the National Labor Relations Board and the dispositions thereof. It does not appear that the contents of the communication or the answers to the questions of the senior field representative were shared with or made available to plaintiff. On February 25, 1972 the complaint was dismissed, the Regional Director finding no probable cause. Complainant, who appeared pro se throughout, appealed the determination. A hearing was held before a member of the State Human Rights Appeal Board on July 26, 1972 and on March 6, 1973 the determination was affirmed. In affirming the board divided evenly, two deciding there was substantial evidence and two concluding there was no substantial evidence to support the determination. On this record there does not seem to have been the requisite, in-depth investigation by the Division. Reference is made by the two who found substantial evidence to the fact that blacks are employed in various categories. This merely confuses the issue. The charge is not for a failure to hire or discrimination in hiring practices, but of a denial of equal terms, conditions and privileges of employment. The record is inadequate to reach an informed conclusion and the defect of parties at the investigatory stage was not cured by a later written communication from the Union representative.